UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA


CASE NO.    00-6162-CR-ROETTGER(s)(s)
(Magistrate Judge Snow)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

WILLIE WALKER,

    Defendant.

_____/


MOVANT WILLIE WALKER'S  PETITION
FOR ATTORNEY'S FEES PURSUANT TO
THE HYDE AMENDMENT AND 18 U.S.C. 3006A

Movant, WILLIE WALKER, by and through his undersigned counsel, respectfully files

this his Petition for Attorney's Fees, pursuant to the Hyde Amendment and 18 U.S.C. 3006A,

and in support thereof, he states as follows:

### A.  Procedural History

1.    Willie Walker was arrested and indicted for conspiracy to possess with intent to

    distribute cocaine and conspiracy to launder money.

2.    Movant, Willie Walker, hired undersigned counsel.

3.    On July 27, 2001, the jury acquitted Willie Walker (and five co-defendants) after

    an hour of deliberation, after almost four weeks of trial.



## B. Facts

Federal and local law enforcement agents conducted a two year investigation of Walker's nephews, Bernard and Barry Smith. The Government employed a paid informant, Ansel Pratt. During an almost two year period, Prat provided the Government information about his "alleged" close up observations of drugs and drug money at the Barry Smith warehouse. Despite his immediate reporting of same on over twenty occasions and law enforcement's proximity to the location(s) of such activity, no drugs or money were seized. The investigation also employed wiretaps and a pole camera in front of the Barry Smith warehouse.

Willie Walker owns L&W Transport in the Fort Myer' s area. L&W Transport works exclusively for Coca Cola, transporting products throughout Florida. Since 1998, Bernard Smith has had a written contract as a subcontractor with L&W to make runs on the east coast.

Willie Walker came into this investigation towards the end. The case against him was based on :

(1)    a July 18 ,1999 meeting in which Pratt allegedly overheard Walker playing the role of consigliere , advising his nephews how to conduct their drug business;

(2)    Special Agent Thompson's testimony that on the same date Walker spotted surveillance and returned to the Barry Smith warehouse; and

(3)    Several subsequent recorded conversations between Walker and his nephews interpreted by Special Agent Thompson as money laundering.

## C.    Discussion

July 18 1999 – Pratt's Perjury

Willie Walker arrived at the Barry Smith warehouse with several unidentified females in his own vehicle.  There he had a brief conversation with Pratt which is seen on the pole camera.  Walker and the females then drove to the Bernard Smith warehouse. At the instructions of the FBI,  Pratt went to the Bernard Smith warehouse. Surveillance was established.

According to Pratt, he overheard a conversation at the Bernard Smith warehouse between Walker and his nephews.   According to Pratt:

1.    Walker advised his nephews not to use Sam Jones on drug runs and instead to use Asia Nelson.  Walker offered other suggestions.

2.    Walker advised he was going to pick up two new trucks in Jacksonville that he had just purchased.

3.    The unidentified women were locked in the office counting drug money.

The Government made no effort to collaborate or test the veracity of these allegations. By that date, the Government had every reason to doubt Prat's veracity. The alleged conversation itself was something out of The Godfather. Why would Willie Walker so speak in front of an Ansel Pratt?   There was  no evidence that Walker even knew Jones or Nelson. The recent purchase of two trucks was a fact that could easily have been checked out.

Pratt left the warehouse first.  Still, no attempt was made to seize the alleged drug money the women were counting. No attempt was made to even identify the unidentified females. At trial the defense established they were the Petitioner's wife, her sister and a friend.

The Government is guilty of conscious avoidance . The Government consciously avoided any action that could have proved Prat was a liar.

## Willie Walker's Alleged Detection of Surveillance

Walker left Bernard's warehouse.  He drove back to Barry's warehouse in a  truck (that had been painted at Bernard's warehouse)followed by the women in the car. There is no disagreement on this. One can see Walker on the pole camera.  It is what happens (or does not happen) next that is so troubling.

## Special Agent  Thompson's Trial Testimony

According to Special Agent  Thompson,  after Walker left  Barry's warehouse he drove in the truck towards Fort Myers. Walker was allegedly  followed by several cars of surveillance officers.  Walker allegedly spotted surveillance.  A call was allegedly  overheard on the wiretap that the surveillance was made.  Walker allegedly returned (now for a third time)  to the Barry

Smith warehouse. Special Agent Thomson, who had stayed at the warehouse, allegedly saw Walker return and meet with Barry Smith.

This would be classic evidence of guilty knowledge by engaging in counter surveillance. Except it was not true and the Government should have known it was not true. There is no third Walker visit to the Barry Smith warehouse on the pole camera. The Government did not call one surveillance agent who saw Walker's truck turn around. The Government introduced no tape of a telephone call stating that Walker detected surveillance. It is incomprehensible that the Government would not have introduced such evidence if in fact it existed.

Both Walker and his wife testified that there was no spotting of surveillance and no return to the warehouse. It was at issue. The Government presented no rebuttal.

## B. The Tapes

Shortly afterwards, several conversations were recorded between Walker and his nephews. It should be obvious to anyone that these conversations dealt with the trucking business. In the critical conversation Barry Smith asked for a check for nine something.

Special Agent Thompson was the sole witness before the Grand Jury. He testified that nine and a half meant nine thousand five hundred. There was no basis for this. The next question dealt with the bank reporting requirements on amounts of ten thousand. Walker was indicted based on this reckless disregard for the truth. Had the Government subpoenaed one

month of Walker's bank records he would not have been indicted.    Bank records are subpoenaed in every money laundering investigation.

Counsel learned of Special Agent Thompson's grand jury testimony immediately before jury selection when counsel received the *Jencks* materials. Counsel asked Walker to find the check.   Nine Hundred and Sixty-Five Dollars.   The check was supplied to the Government prior to opening statements. If there had been any doubt, it should have ended then and there. Instead, the Government proceeded with the prosecution and simply modified its opening statement to state that nine and a half could mean thousands or hundreds. It meant hundreds. The Government knew.

## C.  MEMORANDUM OF LAW

The Hyde Amendment, under 18 U.S.C. 3006A, allows criminal defendants to recover from the government all "reasonable attorney's fees and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust". See also, *U.S. V. Gilbert*, 198 F. 3d 1293 (11th Cir. 1999).

## D.  REQUEST FOR HEARING

We respectfully request a hearing on this matter.  We believe an evidentiary hearing is necessary.

## E.  CONCLUSION

For the foregoing reasons, WILLIE WALKER seeks an award of attorney's fees.  If and when entitlement is established, WILLIE WALKER will submit a subsequent pleading and affidavit for a determination on the amount of fees requested.

## CERTIFICATE OF
## COMPLIANCE WITH LOCAL RULE S.D.Fla. 88.9A

The undersigned attempted to contact Kathleen Rice, Esq., the Assistant United States Attorney assigned to this case, but Ms. Rice was unavailable at the time of the filing of this motion.

WHEREFORE, the undersigned respectfully requests that this Honorable Court grant the relief requested herein.

Respectfully submitted,

VINCENT J. FLYNN, ESQ.
F.B.N. 151145
1221 Brickell Avenue, Suite 1020
Miami, FL 33131
Tel: (305) 858-1414
Facsimile: (305)858-7787

VINCENT J. FLYNN

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed to the following this _____ day of _____, 2001:

Kathleen Rice, Esq.
Assistant United States Attorney
500 E. Broward Blvd.
7th Floor
Fort Lauderdale, Fl 33394

Richard Diaz, Esq.
2701 S.W. 3rd Avenue
Miami, Florida   33129-2335

Patrick Hunt, Esq.
Federal Public Defender
101 N.E 3rd Avenue
Suite 202
Fort Lauderdale, Florida  33301

Randee Golder, Esq.
1300 Park Commerce Blvd.
Suite: 263
Delray Beach, Florida 33445

Martin Feigenbaum, Esq.
Museum Tower
150 West Flagler Street
Suite 1565
Miami, Fl 33130

Steven Kassner, Esq.
815 Ponce De Leon Blvd.
Suite 303
Coral Gables, Fl 33134

Manuel Gonzalez, Jr., Esq.
780 N.W. 42ND Avenue
Suite 318
Miami, Florida 33126-5536

Michael Entin, Esq.
One East Broward Boulevard
Suite 1500
Fort Lauderdale, Florida 33301

_____
Vincent J. Flynn