UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   00-6162-CR-ROETTGER(s)(s)
(Magistrate Judge Snow)

UNITED STATES OF AMERICA,

   Plaintiff,

v.

WILLIE WALKER,

   Defendant.
_____/



MOVANT WILLIE WALKER'S REPLY TO
GOVERNMENT'S RESPONSE TO DEFENDANT'S
PETITION FOR ATTORNEY'S FEES PURSUANT TO
THE HYDE AMENDMENT AND 18 U.S.C. 3006A

Movant, WILLIE WALKER, by and through his undersigned counsel, respectfully replies as follows:

1.   The Government argues that there were inconsistent explanations for the check and that it makes no difference whether the check was for $965.00 or $9,650.00. The Government is incorrect on both points. The check was a loan and is so marked on the face of the check. The amount is critical. The Government is technically correct. A check for $9.65 could constitute money-laundering. But in practice, there is a vast difference between a check for $965.00



and a check for $9,650.00. Indeed the very next line of questioning to Agent Thompson in front of the grand jury concerned the bank reporting requirements and how criminals attempt to evade them by depositing slightly under $10,000.00.

2. More troubling is the Government's response concerning WALKER's alleged spotting of the surveillance and a telephone conversation overheard on the wiretap that the surveillance had been made. At trial, Agent Thompson testified that:

(1) WILLIE WALKER left Barry Smith's warehouse in the late afternoon driving a truck and heading in the direction of Fort Myers. WILLIE WALKER was being followed by several surveillance vehicles. At some point WILLIE WALKER allegedly made the surveillance, stopped, turned around and drove back to Barry Smith's warehouse for a third time.

(2) A conversation on that same date was overheard on the wiretap that the surveillance had been made. This testimony gave the jury the inference that WILLIE WALKER knew he was committing a crime and therefore was conscious of his surroundings, that he detected the surveillance and went back to the warehouse to report this to Barry Smith and that someone then made a telephone call on one of the wiretapped telephones reporting that there had been surveillance. This is classic counter-surveillance evidence which, if true, is indeed probative of guilt. Defendant WALKER's point in the Petition is that it is not true. WALKER

makes the point that had surveillance agents seen him turn around on the highway in a truck and return to Barry Smith's warehouse, there would have been testimony of this by surveillance agents. The Government also would have introduced the wiretapped conversation corroborating the fact that surveillance had been made.

It appears from the Government's Response that the Government is admitting that WALKER is at least half correct. The Government admits that the wiretap interception actually concerned one of the Smith brothers being chased by the police in an unrelated matter.[1] The Government now states that because of the intercepted call law enforcement pulled off the surveillance of Defendant WALKER.[2] What is not clear from the Government's response is whether it is still claiming (as Agent Thompson testified) that surveillance agents did observe WALKER turn his truck around on the road and drive back to the Barry Smith warehouse a third time. If the Government is now admitting that surveillance

---

[1] The Government does not state which brother was being chased, nor when the chase occurred. Agent Thompson testified that after WALKER left the Barry Smith warehouse in the late afternoon, Agent Thompson continued to surveil the Barry Smith warehouse. WALKER then allegedly made the surveillance and returned to the Barry Smith warehouse to meet with Barry Smith. If this is true, Barry could not be the brother the Government is referring to since he was at the warehouse awaiting his uncle's return, blissfully unaware of Agent Thompson's continued surveillance. But was not Bernard Smith's warehouse also under surveillance?

[2] Thus, the call had to be in the short interval of time between Walker's driving away from the Barry Smith warehouse and his (alleged) return. But were not both brothers at their warehouses during this time period?

agents did not observe WALKER turn around because the surveillance had been called off, then the Government intentionally misled the jury at trial. The clear import of Agent Thompson's testimony was that surveillance agents followed WALKER from the warehouse and observed WALKER inexplicably turn his truck around and head back to the warehouse and that his apparent detection of surveillance was corroborated by an intercepted telephone call. Did surveillance agents observe WALKER turn his truck around and return to the Barry Smith warehouse? The Government should be required to this question yes or no. If the answer is yes, the Government should be required to supply the names of the agents who saw this critical fact and any reports which corroborate it. If not, intentionally false testimony and argument was presented to this jury which in and of itself would justify an award of attorney's fees under the Hyde Amendment. The Government at trial sought to support its weak case against Mr. WALKER with proof of counter-surveillance by Mr. WALKER. Defendant WALKER testified at trial that it did not happen. The pole camera confirms WALKER did not return a third time to Barry Smith's warehouse. The jury was misled.

Respectfully submitted,

VINCENT J. FLYNN, ESQ.
F.B.N. 151145
1221 Brickell Avenue, Suite 1020
Miami, FL 33131
Tel: (305) 858-1414
Facsimile: (305)858-7787

_____
VINCENT J. FLYNN


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed to the following this ___ day of _____, 2001:

Kathleen Rice, Esq.
Assistant United States Attorney
500 E. Broward Blvd.
7th Floor
Fort Lauderdale, Fl 33394

Richard Diaz, Esq.
2701 S.W. 3rd Avenue
Miami, Florida 33129-2335

Patrick Hunt, Esq.
Federal Public Defender
101 N.E 3rd Avenue
Suite 202
Fort Lauderdale, Florida 33301

Randee Golder, Esq.
1300 Park Commerce Blvd.
Suite: 263
Delray Beach, Florida 33445

Martin Feigenbaum, Esq.
Museum Tower
150 West Flagler Street
Suite 1565
Miami, Fl 33130

Steven Kassner, Esq.
815 Ponce De Leon Blvd.
Suite 303
Coral Gables, Fl 33134

Manuel Gonzalez, Jr., Esq.
780 N.W. 42ND Avenue
Suite 318
Miami, Florida 33126-5536

Michael Entin, Esq.
One East Broward Boulevard
Suite 1500
Fort Lauderdale, Florida 33301

_____
Vincent J. Flynn